UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANNA L. DIAMOND,

      Plaintiff,

v.                                                    Case No. 1:20-cv-419
                                                      Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her application for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff filed an application for benefits on August 27, 2014, alleging a disability onset date of November 15, 2013.  PageID.61, 537.  Plaintiff identified her disabling conditions as no thyroid gland (surgical removal), bipolar disorder, and depression.  PageID.265.  Prior to applying for DIB, plaintiff completed the 12th grade and had past relevant work as a debt collector. PageID.553. On April 14, 2016, administrative law judge (ALJ) James F. Prothro entered a decision denying benefits.  PageID.61-71.  That decision was reversed and remanded by this Court. On remand, ALJ MacDonald reviewed plaintiff's application de novo, held another administrative hearing with a medical expert present (PageID.564-639), and entered a written decision denying benefits on April 8, 2019.  PageID.537-555.  In addressing plaintiff's claim, ALJ MacDonald explained

1

> Pursuant to the District Court remand order, the Appeals Council has directed the undersigned to re-evaluate Dr. Mohammad's opinions, address the limiting effects of the claimant's bipolar disorder, and adjust the claimant's residual functional capacity accordingly.

PageID.537.  ALJ MacDonald's decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations."  *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "[T]he threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla.  It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990).  The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence.  *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the

reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional

capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.    ALJ's DECISION

Plaintiff's application failed at the fifth step of the evaluation. At the first step, ALJ MacDonald found that plaintiff met the insured requirements of the Social Security Act through June 30, 2019, and that she has not engaged in substantial gainful activity since November 15, 2013, the alleged onset date. PageID.539. At the second step, the ALJ found that plaintiff had the following severe impairments: residuals of thyroidectomy (fatigue); migraine headaches; fibromyalgia; asthma; mild disc bulge at L1-L2; subtle labral tear of the right hip; neuralgia; obesity; attention deficit hyperactivity disorder (ADHD); anxiety/obsessive compulsive disorder; bipolar disorder/depression; and personality disorder/conduct disorder. *Id.* At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.540.

The ALJ decided at the fourth step that:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry, push and/or pull 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or

4

walk six hours in an 8-hour workday and sit six hours in an 8-hour workday. She can occasionally push and/or pull with the right upper extremity. The claimant can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps, stairs, balance and stoop, kneel, crouch or crawl. She can have no exposure to unprotected heights or to moving mechanical parts. The claimant can have frequent exposure to dust, fumes, odors, gases and poor ventilation. She can frequently handle, finger, and feel with the bilateral upper extremities. The claimant can understand and remember simple instructions and can carry out simple tasks with simple work related decisions and judgments in two hour segments allowing for normal breaks. She can tolerate occasional changes in a routine work setting. She is limited to low stress work defined as no assembly line work and no hourly quotas. The claimant can have occasional interaction with supervisors and co-workers, and no interaction with the general public as part of the job duties (either on the phone or in person). She is limited to no tandem tasks and to moderate noise as that is defined in the SCO.

PageID.543.  The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.553.

At step five, the ALJ determined that plaintiff could perform other, unskilled jobs existing in the national economy at both the light and sedentary exertional levels.  PageID.554-555.  Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy at the light exertional level such as router (53,000 jobs), price marker (307,000 jobs), and package sorter (41,000).  PageID.554.  The ALJ further found that "[e]ven if the hypothetical individual was reduced to sedentary work with the remaining limitations as assessed above in Finding #5, jobs would remain that such an individual could perform" such as addresser (19,000 jobs), table worker (23,000 jobs), and document preparer (47,000 jobs).  *Id*. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from November 15, 2013 (the alleged onset date) through April 8, 2019 (the date of the decision).  PageID.555.

### III.    DISCUSSION

Plaintiff contends that ALJ MacDonald's residual functional capacity (RFC) determination is not supported by substantial evidence.  RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments.  20 C.F.R. §§  404.1545 and 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).  The ALJ determines the RFC "based on all the relevant medical and other evidence in [the claimant's] case record."  20 C.F.R. §§ 404.1520(e) and 416.920(e).  Plaintiff set out four errors in the ALJ's evaluation of the RFC.

> **A. The ALJ failed to give proper weight to the findings and opinion of plaintiff's treating psychiatrist, as required by 20 C.F.R. §404.1527(c).**

Plaintiff contends that ALJ MacDonald did not assign proper weight to the opinion of her treating psychiatrist, Niaz Mohammad, M.D.  Because plaintiff filed her application before March 27, 2017, the "treating physician rule" applies to the ALJ's decision.  *See* 20 C.F.R. § 404.1527.  Under this rule, a treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997).  Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial

evidence in the case record.  *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375

(6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2).  Finally, the ALJ must articulate good reasons for not

crediting the opinion of a treating source.  *See Wilson v. Commissioner of Social Security*, 378

F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons

in our notice of determination or decision for the weight we give your treating source's opinion").

As discussed, the Appeals Council directed ALJ MacDonald to re-evaluate Dr.

Mohammad's opinions.  The ALJ's decision references opinions from Michael Lace, Ph.D., the

medical expert who testified at the February 21, 2019 hearing.    For these reasons, the ALJ's

extensive evaluation of Dr. Muhammad's opinions is set forth in its entirety:

> I have considered the opinion of Dr. Mohammad at Exhibit 7F and rendered
> on February 19, 2016, (Duplicated at Exhibit 10F and 23F), but I give it little
> weight. Notably, Dr. Mohammad, as an example, opined that the claimant would
> be unable to meet competitive standards and maintain attention for two hour
> segments (Exhibit 7F/1). However, the claimant worked part-time in 2016 and in
> 2017, and re-started school in 2017 (Exhibit 9D/1, 17F/3). While the claimant
> worked part-time, it would seem that she would have had to maintain concentration
> for two-hour segments. Furthermore, there are no mental status examinations, of
> record, that actually tested her attention and concentration. During the consultative
> evaluation, the claimant could name past Presidents, large cities, famous people,
> subtract serial sevens, and do simple addition, division or multiplication (Exhibit
> 20F/3). Moreover, she maintains concentration sufficient to drive, read, draw, and
> pay bills (Exhibit 16E/4, 5).  Dr. Mohammad opined that the claimant would be
> markedly limited in the ability to maintain concentration, persistence or pace
> (Exhibit 7F/2). However, as discussed herein, this is not borne out by the record.
> While there was no actual testing that tested her ability to concentrate, the claimant
> worked part-time, restarted school, drives, reads, draws and pays bills, which
> suggests the ability to concentrate, and which suggests the ability to maintain a
> schedule and do her job at least on a part-time basis.  Additionally, the claimant
> wanted her disability approved so that she could have her own independent living,
> which appears inconsistent with someone who is markedly limited in the ability to
> maintain concentration, persistence or pace (Exhibit 21F/1). Furthermore, despite
> opining a marked limitation, the doctor opined the claimant could manage her own
> funds (Exhibit 7F/3). Dr. Mohammad opined that the claimant has had at least one
> episode of decompensation once a year continuously since 2013, which is not
> supported by the fact that she was working and restarted school. Moreover, the
> record tends to show that the claimant was focused on getting her disability
> approved, which was affecting her social and financial life and was looking forward

to getting it approved (Exhibit 21F/1, 28F/1). Furthermore, while Dr. Mohammad opined no competitive work, as discussed the claimant worked in 2016 and 2017. Moreover, Dr. Lace, to whom I have given some weight, opined that the claimant would miss about 4 days of work per month, which Dr. Lace opined is purely speculative and not consistent when reviewing the longitudinal record (Exhibit 7F/3).

I have also considered the opinion of Dr. Mohammad at Exhibit 8F (Duplicated at Exhibit 23F) but I give it little weight. Notably, in the opinion of March 3, 2016, Dr. Mohammad opined that the claimant was compliant with medications and was taking everything as directed (Exhibit 8F/1). However, while the claimant did not disclose to Dr. Mohammad that she was using marijuana, and in fact denied using substances, the record shows that she was using marijuana (Exhibit 14F/62, 25F/36). The doctor opined that the claimant had poor concentration and poor ability to remember things or stay focused on task. However, behavioral office visits in December 2013, April 2014, July 2014, August 2014, September 2014, November 2014, February 2015, July 2015, August 2015, September 2015, January 2016, December 2016, August 2017, November 2017, February 2018, and November 2018 revealed memory and abstract were within normal limits (Exhibit 3F/13, 3F/9, 3F/5, 3F/1, 5F/24, 5F/20, 5F/ 10, 5F/8, 5F/6, 5F/2, 17F/9, 17F/3, 21F/1 and 28F/1). Moreover, the record shows that the claimant verbally endorsed understanding of the information that the doctors provided her (Exhibit 9F/13, 11F/13, and 13F/11). Dr. Mohammad encouraged the claimant not to work indicating that she was not stable enough to go back to work, which was in 2013 (Exhibit 8F/2). He opined that she would not be able to function at any job at the moment, which was March 2016. However, the claimant returned to part-time work in 2016 and 2017. He opined that the claimant's medications do not improve her condition but she reported that her combination of medications were working for her (Exhibit 21F/1). It is clear that some of his opinion is based upon her subjective complaints to him; however, as is noted in this decision, her subjective complaints are not entirely consistent. Further, while he did personally exam the claimant and he had a treating relationship with her, he did not have the whole picture like Dr. Lace. I therefore give less weight to Dr. Mohammad's opinions.

The claimant's representative ask Dr. Mohammad about his "philosophy on work" and how he is reluctant to endorse disability (Ex. 8F). I find this portion of his opinions to be wholly irrelevant as it attempts to bolster his credibility and thus bolster his opinion, which is not proper in these proceedings.

PageID.550-552.[1]

---

[1] With respect to part-time work, the ALJ stated in footnote 1, "While [plaintiff] noted she took many breaks at work due to panic attacks, there is nothing in the record to support that allegation." PageID.550.

ALJ MacDonald also addressed Global Assessment of Function ("GAF") scores which appear in the record.  PageID.552.  The ALJ did not give much evidentiary value to these scores, stating

> I have considered the GAF scores of record, which range from 40-55 (Exhibit 1F, 3F, 5F, and 17F). However, I do not give much weight to the scores. GAF scores are highly subjective, represent a snapshot in time with respect to the claimant's functioning, and are not dispositive for purposes of the Social Security act.

PageID.552.[2]

Plaintiff contends that ALJ MacDonald erred by discounting the doctor's opinion: because she tested positive for marijuana; because she attempted to work part-time; because she attempted to perform part-time work, attend school, and be independent from her parents; and because the doctor's findings were not supported by his own treatment notes.  Plaintiff's Brief (ECF No. 14, PageID.1750-1752).

With respect to plaintiff's use of marijuana, the ALJ could consider this fact in evaluating plaintiff's candor with her treating psychiatrist and in the effect which the undisclosed use of this substance could have on the medications prescribed by Dr. Muhammad.  As discussed, the ALJ observed that Dr. Mohammad opined that the claimant was compliant with medications and was taking everything as directed.  PageID.551.  However, the ALJ found that "while the claimant did not disclose to Dr. Mohammad that she was using marijuana, and in fact denied using substances, the record shows that she was using marijuana."  PageID.551.  In this regard, the ALJ found inconsistencies in plaintiff's testimony.  The plaintiff testified "that she last used marijuana in 2014, but has not talked to Dr. Mohammad about using medical marijuana."  PageID.552.

---

[2] Like the ALJ, courts have questioned the relevance of GAF scores in disability cases. *See, e.g., Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir. 2006) (a GAF score "may have little or no bearing on the subject's social and occupational functioning").

However, the ALJ pointed out that, "the record shows that the claimant was using marijuana, despite denying to her doctor the use of any substances (Exhibit 5F/6, 14F/62, 17F/3, 17F/1, 25F/36, and 21F/1)" and that "[n]otably, while the claimant testified that she last used marijuana in 2014, her urine drug screen was positive for cannabinoid in December 2017 (Exhibit 25F/36)." PageID.552.

Next, the ALJ discounted Dr. Mohammad's opinion regarding plaintiff's inability to concentrate, in part, because plaintiff could perform part-time work.  As discussed, while Dr. Mohammad "opined that the claimant would be unable to meet competitive standards and maintain attention for two hour segments," the ALJ noted that "the claimant worked part-time in 2016 and in 2017, and re-started school in 2017."  PageID.550.  From this, the ALJ could properly conclude that "[w]hile the claimant worked part-time, it would seem that she would have had to maintain concentration for two-hour segments."  PageID.550.

Next, the ALJ found that "the claimant wanted her disability approved so that she could have her own independent living, which appears inconsistent with someone who is markedly limited in the ability to maintain concentration, persistence or pace (Exhibit 21F/1)" and that Dr. Mohammad opined that plaintiff could manage her own funds.  PageID.551.  The ALJ could properly consider the evidence of plaintiff's motivation for obtaining disability benefits, in this case attending school and being independent from her parents.  *See James-Parker v. Commissioner of Social Security*, No. 1:11-cv-1236, 2013 WL 1150593 at *6 (W.D. Mich. March 19, 2013) ("One inconsistency in the record which an ALJ can consider in discounting a claimant's credibility is the presence of a 'strong element of secondary gain.' *Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir.1996).").

Finally, plaintiff contends that the ALJ erred by finding that Dr. Mohammad's opinions were not supported by the doctor's own treatment notes.  The ALJ provided a lengthy review of the medical record and explained why the doctor's opinions were not supported by the treatment notes.  The ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity."  *Webb*, 368 F.3d at 633 (internal quotation marks and brackets omitted).  This is precisely what the ALJ did in evaluating the record in this case.  If the ALJ's decision is supported by substantial evidence, it must be affirmed, even if this Court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.  *Cutlip*, 25 F.3d at 286.  *See Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009) ("The substantial-evidence standard  .  .  . presupposes that there is a zone of choice within which the decision-makers can go either way, without interference by the courts.") (internal quotation marks omitted).  Accordingly, plaintiff's claims of error are denied.

### B. The ALJ failed to properly consider the factors required by 20 C.F.R. 404.1527(c) when he addressed Dr. Mohammad's opinions.

Plaintiff contends that the ALJ did not properly address the factors required by 20 C.F.R. § 404.1527(c), *i.e.*, length of treatment (over five years), frequency of treatment, Dr. Mohammad's own observations, or the many medication changes that plaintiff needed because her medications were not effective, or they caused undesirable side effects, citing PageID.317, 348, 349, 352, 358, 360, 364, 366, 367, 440, 443, 445, 447, 449, 453, 455, 459, 460.  Plaintiff's Brief at PageID.1752.  Plaintiff points to outside effects which included over sedation from Geodon, PageID.425; brain "fogginess" from Latuda, PageID.431-432; restlessness from Provigil, PageID.433-434; and being suicidal after taking Vraylar, PageID.1199.

> In evaluating the intensity and persistence of a claimant's symptoms and determining the extent to which those symptoms limit a claimant's capacity for work, the Commissioner considers various factors, including "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms." 20 C.F.R. § 416.929(c)(3)(iv). Allegations of a medication's side effects must be supported by objective medical evidence. *See Essary v. Commissioner of Social Security*, 114 Fed. Appx. 662, 665-66 (6th Cir. 2004) (where plaintiff testified that she suffered from dizziness and drowsiness as a result of her medications, the ALJ did not err in finding that she suffered no side effects where her medical records contain no such reported side effects to her physicians).

*Hensley v. Commissioner of Social Security*, No. 1:14-cv-1227, 2016 WL 1156591 at *4 (W.D. Mich. March 24, 2016).  *See, e.g., Farhat v. Secretary of Health and Human Services*, No. 91-1925, 1992 WL 174540 at * 3 (6th Cir. July 24, 1992) ("[The claimant's] allegations of the medication's side-effects must be supported by objective medical evidence").

In his March 3, 2016 statement, Dr. Muhammad indicated that plaintiff did not have serious medication side effects, noting that "[w]e have made a lot of medication changes," that "she is at a state where she is compliant with medications and she is taking everything as directed," and that "[s]he does not have as many side effects now." PageID.485.  The record reflects that Dr. Mohammad promptly addressed plaintiff's reported side effects.  *See* PageID.448-449 (Provigil and Lexapro discontinued in May 2015); PageID.446-447 (Latuda discontinued in June 2015); PageID.440-441 (Geodon discontinued in September 2015); PageID.1199-1200 (Vraylar discontinued in September 2016 after plaintiff "reported of feeling suicidal" which "started after taking the new medicine Vraylar").  Plaintiff appears to have benefitted from Dr. Mohammad's treatment. In this regard, at a consultative psychological evaluation in January 2018, plaintiff reported that "[s]he tended to take her medication as prescribed" and "noted few side effects." PageID.1422.  Based on this record, the medication side effects did not appear to have a significant impact on plaintiff's ability to work.  Accordingly, this claim of error is denied.

**C. The ALJ failed to consider the effects of all plaintiff's impairments in determining her RFC, including but not limited to, her inability to sustain concentration, persistence or pace, maintain attendance and her ability to frequently handle or finger.**

The gist of plaintiff's claim is that the ALJ failed to address the diffuse pain in her back, abdomen, arms and legs. Plaintiff's Brief at PageID.1753. Plaintiff contends that "[s]ubstantial evidence does not support a finding that she could occasionally push and/or pull with her right upper extremity, or frequently handle, finger or feel with the bilateral upper extremities, carry out simple tasks and judgments in two hour segments allowing for normal breaks, or otherwise sustain substantial gainful activity as limited by the ALJ's RFC finding." *Id.* In this regard, plaintiff refers to a September 15, 2017 examination with rheumatologist Davi Sa Leitao, M.D., who determined that she had a very typical presentation of fibromyalgia with no evidence of inflammatory arthritis or connective tissue disease.  PageID.1142. [15F] The doctor explained that physical activity is the best treatment for fibromyalgia.  *Id.*

The ALJ reviewed the rheumatologist's examination as follows,

The claimant had a rheumatology visit on September 15, 2017, and MRI showed subtle right labral tear in the hip (Exhibit 15F/1). The claimant reported having some memory lapses but CT scan of the head was normal (Exhibit 15F/2). She reported fatigue and decreased activity.  Examination revealed the claimant had pain in every joint touched but there was no evidence of synovitis. She had trigger points all over her body. There were no features for chronic inflammatory arthritis and she had very good range of motion of the joints (Exhibit 15F/8). She had a very typical presentation of fibromyalgia (Exhibit 15F /10).

PageID.546.  While the ALJ found that plaintiff had a severe impairment of fibromyalgia, he observed that "in late 2018, the claimant's doctor noted that she had been diagnosed with fibromyalgia, but does not receive treatment." PageID.540.  Based on this record, the RFC limiting plaintiff to "occasionally push and/or pull with the right upper extremity" and "frequently handle,

finger, and feel with the bilateral upper extremities" is consistent with the medical record. PageID.543. Accordingly, this claim of error is denied.

> ### D. The ALJ did not properly analyze plaintiff's subjective symptoms as required by 20 C.F.R. 404.1529(c), and his findings are not supported by substantial evidence.

The gist of plaintiff's claim is that the ALJ mischaracterized and improperly evaluated her subjective symptoms. The regulations provide that:

> Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

The ALJ summarized plaintiff's claims as follows:

> The claimant alleges an inability to work due to concentration difficulties, pain and fatigue. The claimant testified to pain in her back and right hip. She testified that she could lift a gallon of milk, but prefers not to due to pain. She could stand for 10-15 minutes and then her hip hurts. She could walk about a mile but it would hurt. She testified that she had her thyroid removed in 2011 or 2012 and has chronic fatigue 24/7. The claimant testified that she has racing thoughts and trouble

14

getting things done. She testified that she still has panic attacks and has trouble being around people. Moreover, she testified that she last used marijuana in 2014, but has not talked to Dr. Mohammad about using medical marijuana.  .  .  .

I have considered the persistence, intensity and limiting effects of the claimant's symptoms but I do not find them entirely consistent with or wholly supported by the evidence of record. The claimant alleges an inability to work due to concentration difficulties, pain and fatigue. The claimant testified to pain in her back and right hip. She testified that she could lift a gallon of milk, but prefers not to due to pain. She could stand for 10-15 minutes and then her hip hurts. She could walk about a mile but it would hurt. She testified that she had her thyroid removed in 2011 or 2012 and has chronic fatigue 24/7. The claimant testified that she has racing thoughts and trouble getting things done. She testified that she still has panic attacks and has trouble being around people. Moreover, she testified that she last used marijuana in 2014, but has not talked to Dr. Mohammad about using medical marijuana. With respect to the claimant's allegations of disabling back and hip pain, the clinical evaluations revealed slow gait on May 25, 2015 but normal gait on September 3, 2015, September 28, 2015, October 20, 2015, December 15, 2015, March 14, 2016, January 20, 2017, September 9, 2017, November 15, 2017, December 29, 2017, March 6, 2018, and October 2, 2018 (Exhibit 6F/17, 4F/3, 9F/21, 13F/4, 9F/13, 11F/13, 13F/11, 31F/123, 11F/3, 14F/47, 25F/43, 18F/10, 14, 25F/16, and 25F/27). There was only one mention in the record of a marked antalgic gait, favoring the right side (Exhibit 16F/12). However, within two months of the abnormal gait, the claimant was walking normally (Exhibit 25F/43). The record also supports that the claimant had normal strength (Exhibit 4F/19, 9F/21, 13F/4, 18F/47, 31F/123, 14F/38, 31F/68, 14F/47, 25F/43, and 25F/24). During a neurology visit in December 2015, the doctor noted the claimant had some weakness in the bilateral lower extremities, right greater than left, but also noted the testing was variable with effort (Exhibit 9F/12, 11F/13, and 13F/10). Notably, the claimant was able to lift her 70-pound dog into a truck (Exhibit 4F/18). The claimant testified that after having her thyroid removed in 2011 or 2012, she has chronic fatigue 24/7. However, the record shows office visits with the claimant denying fatigue (Exhibit 4F/18, 11F/2). While the claimant does complain of fatigue in the record, her doctor noted that it was unlikely from the thyroid (Exhibit 25F/9).  Moreover, the consultative examiner noted somatic complaints such as fatigue (Exhibit 20F/3). In addition, while the claimant told her neurologist that she was unable to keep a job due to fatigue, she reported to Dr. Mohammad that she started school recently and has not been able to work (Exhibit 9F/20, 13F/3, and 17F/3 ). Furthermore, the record shows that the claimant was using marijuana, despite denying to her doctor the use of any substances (Exhibit 5F/6, 14F/62, 17F/3, 17F/1, 25F/36, and 21F/1). Notably, while the claimant testified that she last used marijuana in 2014, her urine drug screen was positive for cannabinoid in December 2017 (Exhibit 25F/36).

The claimant testified that she still has panic attacks and trouble being around people. The claimant's behavioral health note from November 2018

indicates that she has panic attacks from time to time (Exhibit 28F/1). Moreover, I have accounted for the claimant's panic attacks above in the residual functional capacity by limiting her social interaction in the workplace, and by limiting her to low stress work. The claimant testified that she has racing thoughts and trouble getting things done. However, the longitudinal record supports normal memory and abstract within normal limits (Exhibit 3F/13, 3F/9, 3F/5, 3F/3, 3F/1, 5F/24, 5F/20, 5F/8, 5F/6, 5F/2, 17F/9, 17F/3, 20F/3 and 28F/1). She was able to follow along at the hearing and did not have a panic attack, even through the vigorous cross-examination of the psychological expert.

PageID.543, 552-553.

It is well established that evaluation of a claimant's subjective complaints remains peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Services*, 833 F.2d 589, 592 (6th Cir. 1987). Here, the ALJ's evaluation of plaintiff's reported symptoms is supported by substantial evidence and must be affirmed. *See Blakley*, 581 F.3d at 406; *Cutlip*, 25 F.3d at 286. Accordingly, plaintiff's claim of error is denied.

## IV.     CONCLUSION

For these reasons, the Commissioner's decision will be **AFFIRMED**. A judgment consistent with this opinion will be issued forthwith.


Dated:  March 29, 2022                    /s/ Ray Kent
                                          RAY KENT
                                          United States Magistrate Judge